**AFFIRM; Opinion Filed October 4, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00649-CV

## IN THE INTEREST OF A.B., A MINOR CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC 17-00525-W**

# MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Mother appeals the termination of her parental rights to A.B. In her first four issues, she challenges the legal and factual sufficiency of the evidence supporting the findings to support the termination of her parental rights. In her fifth issue, she urges she received ineffective assistance of counsel. In her sixth issue, she challenges the sufficiency of the evidence to support the appointment of the Texas Department of Family and Protective Services ("CPS") as managing conservator of A.B. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Mother has been diagnosed with schizophrenia. On January 3, 2017, while a resident at Terrell State Hospital, Mother went into labor and was taken by ambulance to another hospital where she delivered A.B. The next day, CPS received a referral and a CPS caseworker made

contact with Mother and A.B. Mother informed the CPS caseworker that she was taking medication to treat her schizophrenia, she did not have any drug use or alcohol use in her history, but she was unemployed and did not have a place to live and care for A.B. Mother also provided the names of two men, C.D. and L.N., as potential fathers of A.B. A few weeks later, Mother agreed to place A.B. with her maternal aunt, T.B., where the child lived for approximately four months before CPS removed the child after T.B. acknowledged she had abused a controlled substance. At the time of that removal, Mother was living at an apartment complex that did not allow children, so CPS placed A.B. in foster care.

On May 31, 2017, CPS filed a petition for the protection of a child, for conservatorship, and for termination of parental rights with respect to A.B. In June 13, 2017, following a hearing, the trial court signed temporary orders that required Mother to complete the following services: parenting classes, a psychological or psychiatric evaluation, counseling, a drug and alcohol assessment, and random drug testing within 24 hours of a request from CPS.

On March 26, 2018, all parties met to participate in mediation and ultimately signed a mediated settlement agreement ("MSA"). According to the MSA, CPS agreed to conduct a home study on the child's maternal aunt, S.B. If the home study was approved by CPS and the child's guardian ad litem, or if the trial court placed the child with S.B. after a placement hearing, then S.B. would be appointed managing conservator of the child, and Mother would be appointed as possessory conservator with supervised visitation. The MSA further provided that should the trial court not place A.B pursuant to approved home studies or after a placement hearing, then Mother agreed to the termination of her parental rights to A.B. and stipulated to having "committed the conduct within TFC 161.001(1) 'O' and such termination is in the best interest of the child." CPS attempted to conduct a home study on S.B., but S.B. declined a home study because she was not interested in long-term placement or adoption. CPS also attempted to conduct a home study on

G.B., another relative named by Mother as a possible relative placement. G.B. declined a home study for similar reasons as S.B.

On April 30, 2018, the trial court conducted a prove-up hearing at which a CPS caseworker, the child's court appointed special advocate ("CASA"), and Mother testified. At the conclusion of the hearing, the trial court orally pronounced judgment terminating Mother's parental rights to A.B. and the parental rights of the alleged fathers C.D. and L.N. as to A.B. On May 11, 2018, the trial court signed a decree of termination of the parental rights of Mother, C.D., and L.N. as to A.B. Mother appealed the trial court's judgment. Alleged fathers C.D. and L.N. did not appeal.

## DISCUSSION

### I. Ineffective Assistance of Counsel

In her fifth issue, Mother argues she received ineffective assistance of counsel. Because resolution of this issue potentially affects the evidentiary value of the MSA, we will address it before turning to address Mother's first four issues, which collectively challenge the sufficiency of the evidence supporting the trial court's findings to support the judgment.

In a suit filed by a governmental entity requesting termination of the parent-child relationship or the appointment of a conservator, an indigent person has a statutory right to counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also* TEX. FAM. CODE ANN. § 107.013(a)(1). The supreme court has held that this statutory right necessarily includes the right to effective assistance of that appointed counsel. *See In re M.S.*, 115 S.W.3d at 544.

The appropriate standard for determining whether counsel is effective is the *Strickland* standard applied in criminal cases. *Id.* at 544–45. First, the appellant must show that counsel's performance was deficient. *Id.* at 545. We take into account all the circumstances surrounding the case and focus primarily on whether counsel performed in a reasonably effective manner. *Id.* Counsel's performance falls below acceptable levels of performance when the representation is so

–3–

grossly deficient as to render the proceedings fundamentally unfair. *Id.* We give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.* In addition to showing counsel's performance was deficient, the appellant must show that the deficient performance prejudiced the defense. *Id.* In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 550.

Mother asserts her counsel was ineffective because her trial counsel failed to present the following motions to the trial court to obtain rulings in a timely manner: a motion to appoint a guardian ad litem for Mother, a motion for continuance and motion to extend statutory deadline, and a motion to set aside the MSA. The record reflects Mother's counsel filed a motion for appointment of guardian ad litem for Mother because she "may have difficulty understanding the nature of this proceeding or be able to assist in her defense of the case." The record further reflects that Mother and her trial counsel proceeded to mediation the following week without obtaining a ruling on the motion. Three days before the prove-up hearing, Mother's trial counsel filed a motion for continuance and motion to extend statutory deadline, and a motion to set aside the MSA. Mother complains that her counsel failed to urge either of those two motions prior to the State presenting evidence.

Even if counsel was ineffective for the alleged failures asserted by Mother, we cannot reverse the judgment unless Mother has shown that failure prejudiced her, that is, whether but for counsel's errors, the result of the proceeding would have been different. *See In re M.S.*, 115 S.W.3d at 550. In this case, the result of the proceeding was that Mother's parental rights were terminated. Mother testified at trial that she was feeling very overwhelmed during the mediation proceedings and that she "just didn't really understand it at all." Mother presented no evidence that a guardian ad litem would have advised her differently than her trial counsel or that she would

–4–

not have signed the agreement had she been appointed a guardian ad litem.  With regards to the motion to set aside the MSA, Mother failed to provide any evidence that the MSA could be set aside pursuant to the family code.  *See* FAM. § 153.0071(e-1) (providing grounds on which trial court may decline to enter judgment on a mediated settlement agreement).[1]  As for the motion for a continuance, even assuming the trial court would have granted the continuance, there is nothing in the record before us to support a conclusion that if counsel had received additional time, there was a reasonable probability that the result of the proceedings would have been different.  *See In re N.T.*, No. 05-12-01284-CV, 2013 WL 1281870, at *4 (Tex. App.—Dallas Mar. 18, 2013, pet. denied) (mem. op.).  Accordingly, appellant has failed to show that but for her counsel's errors, the result of the proceeding would have been different.

We overrule Mother's fifth issue.

## II.     Sufficiency of the Evidence

### A.     *Failure to Complete Ordered Services*

In her first and second issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of A.B. pursuant to section 161.001(1)(b)(O) of the family code.

---

[1] Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds:

  (1) that:

    (A) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; or

    (B) the agreement would permit a person who is subject to registration under Chapter 62, Code of Criminal Procedure, on the basis of an offense committed by the person when the person was 17 years of age or older or who otherwise has a history or pattern of past or present physical or sexual abuse directed against any person to:

      (i) reside in the same household as the child; or

      (ii) otherwise have unsupervised access to the child; and

  (2) that the agreement is not in the child's best interest.

FAM. § 153.0071 (e-1).

A court may terminate a parental relationship if it finds by clear and convincing evidence (1) one or more statutory grounds for termination and (2) that termination is in the child's best interest. FAM. § 161.001(b)(1)–(2). Clear and convincing evidence is proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007.

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable factfinders could have done so and disregard contrary evidence unless reasonable fact finders could not have done so. *See In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If the reviewing court determines that no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, then the court must conclude that the evidence is legally insufficient. *Id.*

In reviewing termination findings for factual sufficiency, we inquire whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Mother urges that the only evidence presented at trial is the MSA and the testimony of the CPS caseworker who testified that Mother was ordered to complete services and that she did not successfully complete them. She urges this testimony was unsupported and conclusory such that

it could not support the judgment. Mother acknowledges the record contains a temporary order wherein she was ordered to complete services, but points out the temporary order was not admitted into evidence. She points out the MSA cites to "TFC 161.001(1) 'O'," and argues that there is no such statute. She further urges that even if the MSA had properly cited to section 161.001(b)(1)(O), the MSA and the CPS caseworker's testimony are legally and factually insufficient to support termination of Mother's parental rights.

Although the temporary order was not admitted at trial, we may presume the trial court took judicial notice of its own files, which includes the temporary order and reports filed with the trial court. *See In re S.V.*, No. 05-12-00663-CV, 2014 WL 4294962, at *5 n.9 (Tex. App.—Dallas Aug. 21, 2014, pet. denied) (mem. op.). As discussed above, that order required Mother to complete the following services: parenting classes, a psychological or psychiatric evaluation, counseling, a drug and alcohol assessment, and random drug testing within 24 hours of a request from CPS. The record contains permanency reports to the trial court signed by the same CPS caseworker who testified at trial, in which she reports that as of November 2, 2017, Mother had not been working on her services and that as of March 12, 2018, Mother had not completed all ordered services. The record also contains reports from the CASA appointed to A.B., in which she states Mother stated she was not receiving services for mental health as of November 8, 2017. The CASA report filed prior to mediation states that Mother has completed services but is not stable with a proper home environment and cannot stay on her medication to fully remain stable.

With regard to the MSA, this Court has already concluded that where no allegation of family violence is made, the trial court is required to rule on an MSA, and the signing parent is bound by its terms. *See In re J.A.S.C.*, 430 S.W.3d 544, 549 (Tex. App.—Dallas 2014, no pet.) (citing *In re Lee*, 411 S.W.3d 445, 447 (Tex. 2013)) ("Father was bound by the terms of the MSA which provided that he failed to fully complete court-ordered services and that termination of his

rights were in the children's best interest."). This record contains no allegation of family violence,[2] and the terms of the MSA stipulate that Mother agreed and stipulated to having committed the conduct within section 161.001(b)(1)(O) of the family code.[3]

In light of the entire record, we conclude there is legally and factually sufficient evidence to support the trial court's finding that Mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of A.B. pursuant to section 161.001(1)(b)(O) of the family code.

We overrule Mother's first and second issues.

### B. Best Interest of the Child

In her third and fourth issues, Mother challenges the trial court's finding that termination of her parental rights is in A.B.'s best interest.

A strong presumption exists that the best interest of the child will be served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. FAM. § 263.307(a). Several statutory factors relevant to this appeal should be taken into account in evaluating a parent's willingness and ability to provide the child with a safe environment, including the child's age and vulnerabilities; results of psychological evaluations of the parents; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to complete counseling services and to cooperate with an agency's close supervision; and the willingness and ability of the child's family to effect positive and personal changes within a reasonable period of time. *Id.* § 263.307(b) (1), (6), (8), (10), (11).

---

[2] *See supra* footnote 1.

[3] We note that in 2015, the Legislature amended section 161.001 of the family code and that current section 161.001(b)(1)(O) is the same as former section 161.001(1)(O). *Compare* FAM. § 161.001(b)(1)(O) (West 2017) *with* FAM. § 161.001(1)(O) (West 2014).

In addition to these statutory factors, we look to other non-exclusive factors relevant to the best-interest determination, including (1) the child's desires, (2) the child's present and future emotional and physical needs, (3) the present and future emotional and physical danger to the child, (4) the parent's parental abilities, (5) the programs available to assist a parent to promote the child's best interest, (6) the parent's plans for the child, (7) the stability of the home, (8) the parent's acts or omissions that may indicate the parent-child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). A best-interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence that the parental relationship endangered the child's safety. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence of section 161.001(b)(1) termination grounds may also be probative of a child's best interest. *See id.* at 28.

Mother acknowledges that both the CPS caseworker and the CASA appointed to A.B. testified that termination was in the child's best interest, but she urges that such opinions are conclusory and unsupported by any evidence admitted at the hearing. She also concedes the signature of A.B.'s guardian ad litem on the MSA is some evidence that the guardian ad litem believed termination was in A.B.'s best interest, but she urges that because the guardian ad litem did not appear to testify at the prove-up hearing, the basis for her opinion is not known. Mother also acknowledges she signed the MSA, in which she agreed that termination was in the child's best interest. Mother maintains there was almost no evidence regarding any of the *Holley* factors, and that she testified she planned to care for her child and herself.

Mother urges that other than the brief testimony at trial, the only evidence supporting the trial court's best interest finding is the MSA. We need not address whether the MSA is sufficient on its own to support the best interest finding. As noted above, we may presume the trial court took judicial notice of its own files. *See In re S.V.*, 2014 WL 4294962, at *5 n.9. The record

contains a summary report dated three days before the prove-up hearing, in which the CASA appointed to A.B. states that Mother continues to struggle to maintain her mental health and was currently living at a half-way house. She states that the foster family caring for A.B. has bonded with the child, that both foster parents consistently express their ongoing interest in adoption, and that the foster mother is willing and more than capable of assisting A.B. with recovery and therapy to recover from the surgeries necessary to correct injuries the child sustained during birth. The summary report concludes that under the circumstances it is in A.B.'s best interest to be adopted by the foster family. The record also contains a report filed by the CASA prior to the mediation, which makes similar statements as those in the summary report and states that Mother lacks a stable home environment and cannot stay on her medication "to fully remain stable."

In light of the entire record, we conclude the record contains legally and factually sufficient evidence to support the best interest finding.

We overrule Mother's third and fourth issues.

## III.   Conservatorship

In her final issue, Mother urges that the evidence is legally and factually insufficient to support the appointment of CPS as managing conservator to A.B. Conservatorship determinations are reviewed for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Therefore, we reverse the trial court's appointment of a managing conservator only if we determine it was arbitrary and unreasonable. *Id.*

Mother urges that the family code creates a presumption that a parent will be named managing conservator, unless the court finds that such appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development" or finds that there is a history of family violence involving the parents. *See* FAM. § 151.131(a). Section 151.131 applies when the parents' parental rights have not been

terminated. However, when the parents' parental rights have been terminated, as in this case, section 161.207 governs the appointment of a managing conservator. *See id.* § 161.207. In that situation, the trial court appoints "a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." *Id.*

Mother does not direct us to any record evidence establishing her as a "suitable, competent adult" and instead appears to rely on her arguments in support of her first four issues that there is insufficient evidence to terminate her parental rights. At trial, Mother testified that at that time, she was employed and staying in a transition home that did not allow children. In light of our resolutions of her first four issues and the record, we cannot conclude Mother has established the trial court abused its discretion by appointing CPS as managing conservator of A.B.

We overrule Mother's sixth issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

180649F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.B., A MINOR CHILD

No. 05-18-00649-CV          V.

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC 17-00525-W.
Opinion delivered by Justice Schenck, Justices Lang-Miers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee recover its costs of this appeal from appellant.

Judgment entered this 4th day of October, 2018.